# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

DAMIEN A. SUBLETT                                                                PLAINTIFF

v.                                            CIVIL ACTION NO. 4:14CV-P54-M

ALAN BROWN, WARDEN *et al*.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff, Damien A. Sublett, a prisoner proceeding *in forma pauperis*, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). Subsequent to the filing of the complaint, he filed two motions to amend the complaint (DNs 6 & 7).

Federal Rule of Civil Procedure 15(a)(2) allows "a party [to] amend its pleading only with the opposing party's written consent or the court's leave." The rule further provides that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision as to whether justice requires the amendment is committed to the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Upon consideration, the motions to amend (DNs 6 & 7) are **GRANTED**.

This matter is before the Court for initial review of the complaint and amendments pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow the following claims to proceed: (1) the First Amendment retaliation claim against Defendant Foster arising out of Plaintiff being placed in the Special Management Unit (SMU) on May 5, 2014; (2) the First Amendment retaliation claim against Defendant Brown

arising out of Plaintiff being placed in the strip cell[1] from May 8-12, 2014; (3) the Fourth Amendment right-to-privacy claim against Defendant Bradley; (4) the Eighth Amendment claim against Defendants Cooney, Robinson, Buchanan, and Williams regarding the allegedly unsafe bunk; and (5) the Eighth Amendment claim against Defendant Brown regarding the conditions of confinement while Plaintiff was in the strip cell from May 8-12, 2014.

## I. SUMMARY OF CLAIMS

In his complaint and amendments, Plaintiff sets forth seven claims, and he names eight Defendants. The eight named Defendants are as follows: (1) Alan Brown, the Warden at Green River Correctional Complex (GRCC); (2) Casey Foster, Sergeant, GRCC; (3) Cortney Bradley[2], Nurse, GRCC; (4) S. Gee, Sergeant, GRCC; (5) Bruce Cooney, Unit Administrator, GRCC; (6) Michael Robinson, Unit Administrator, GRCC; (7) Jenifere Buchanan, Correctional Treatment Officer, GRCC; and (8) Ricky Williams, Deputy Warden, GRCC. Plaintiff sues each Defendant in his/her individual capacity. He seeks monetary damages, punitive damages, injunctive and declaratory relief, and for Defendants to pay the costs of this action.

*Claim One*

Plaintiff states that he is presently incarcerated at GRCC where the events about which he complains in this case occurred. Prior to being at GRCC, Plaintiff states that he was incarcerated at Kentucky State Penitentiary (KSP). Plaintiff states that he was transferred for his protection because a hit was placed on his life by a gang.

While at GRCC, Plaintiff states that he was involved in pending litigation in which he named a former GRCC warden as a defendant, Case No. 5:12CV-P180-R. At some point during

---

[1] Plaintiff describes a strip cell as a cell that is "total[ly] empty just concrete and metal."
[2] Plaintiff uses two different spellings of this name in his pleadings. The Court will use the spelling ending in "ley."

his incarceration at GRCC, Plaintiff states that Defendant Foster called him to give him a piece of legal mail. Plaintiff states that Defendant Foster recognized the name of the former warden as one of the defendants in Plaintiff's pending litigation. Plaintiff states that Defendant Foster encouraged Plaintiff to drop the lawsuit, told Plaintiff that he caused trouble everywhere he went, and stated that there are white power gangs in every prison. According to Plaintiff, Defendant Foster then informed him that if he "f---ed up" at GRCC, he would send him right back to KSP. Plaintiff states that Defendant Foster gave him his mail, and Plaintiff just stared at Defendant Foster. Defendant Foster, according to Plaintiff, asked if Plaintiff was threatening him.

Plaintiff states that on May 5, 2014, he was handcuffed, searched, and escorted out of the legal library where he was working on his lawsuit involving KSP and brought to the SMU. Plaintiff states that he received a detention order the next morning which indicated that on May 5, 2014, Defendant Foster had received information that Plaintiff made a statement to the effect that he was going to get a write-up serious enough to get transferred to KSP. According to Plaintiff, the detention order was subsequently squashed by Defendant Brown as being meritless. Plaintiff states that there were no computers in segregation, he was not allowed to access the legal library during that time, and he was not given his legal materials while in segregation.

Plaintiff's first claim is for retaliation and arises out of these events. According to Plaintiff, Defendant Foster placed him in segregation under a "false allegation to prevent [him] from pursueing his Law Suit's against prison official's."

*Claim Two*

Plaintiff's second claim arises out of events that occurred on May 7, 2014, while Plaintiff was incarcerated in the SMU. According to Plaintiff, the shower in the SMU has a large window

3

so that "officers can observe an inmate showering." According to Plaintiff, while he was showering, Defendant Bradley, a female nurse, walked past the window while retrieving some blood pressure equipment. Plaintiff states that Defendant Bradley came to the shower window and stared at Plaintiff and his penis twice while he was showering. On the second occasion, Plaintiff represents, Defendant Bradley looked at Plaintiff and smiled. According to Plaintiff, Defendant Gee took no action to stop Defendant Bradley, but "condoned it by allowing [Defendant Bradley] to return a second time." Plaintiff states that while attempting to cover himself from Defendant Bradley, he fell and injured his knee. According to Plaintiff, Defendant Bradley later came on the walk and made comments about the size of Plaintiff's penis. Plaintiff states that as a result of the incident in the shower, he filed a grievance against Defendants Bradley and Gee.

Plaintiff contends in this second claim that Defendants Bradley and Gee violated his Fourth Amendment right to privacy.

*Claims Three and Four*

According to Plaintiff, on May 8, 2014, Defendant Brown "had Plaintiff strip Naked and placed in a strip cell for filing a grievance." According to Plaintiff, the cell was "made of complete metal and concrete with no matress." Plaintiff states that he was placed in this cell with "No clothing, bedding or Sheet, no material to cover his naked body." When he was initially placed in the cell, Plaintiff states, he was given a smock vest. According to Plaintiff, the vest was taken by the second shift for cleaning, but was never returned. Plaintiff states that he was forced to sleep on the concrete floor which had screws sticking out of it. One screw "tore [Plaintiff's] left side pulling skin for about an inch and a half [and] caused bleeding and burning

4

plaintiff was seen by the nurse and was given ointment ultimately it worsen and got infected . . . ." Plaintiff states that he remained naked in this cell for five days. According to Plaintiff, at some point, Defendant Brown "came to the cell window in which Plaintiff was confined and informed Plaintiff, that he is being held Naked, in a strip cell for fileing a grievance." Plaintiff states that this was done to keep Plaintiff from getting statements from other prisoners on the walk. Further, according to Plaintiff, two inmates who had witnessed the events were transferred. Plaintiff states that staff told him he could not contact the transferred inmates.

Plaintiff's third claim is another First Amendment retaliation claim. Plaintiff claims that Defendant Brown had Plaintiff placed in the strip cell in retaliation for filing a grievance against Defendants Bradley and Gee. Plaintiff's fourth claim is an Eighth Amendment claim against Defendant Brown regarding the conditions of confinement in the strip cell.

*Claim Five*

Plaintiff states that during the time he was in the strip cell his reply to defendants' response to his motion for summary judgment in another case in this Court, *Sublett v. White*, No. 5:12CV-P180-R, was due. Plaintiff continues as follows:

> Because, Plaintiff, was held in a strip cell from 5-8-14 and 5-12-14 and plaintiff was placed in seg in the inception plaintiff could not file his reply brief. Plaintiff informed Staff, of his reply brief and that he needed to mail it out. However, Staff informed Plaintiff until the Warden allows plaintiff to be removed from a strip cell he plaintiff could not have any Legal Material. Therefor, preventing plaintiff from having access to the Court to file his reply brief. Had plaintiff filed his reply brief, plaintiff may have won Summary Judgment against Defendant Wilson (KSP) official. As well, [Plaintiff] missed his filing deadline because of no access to the court.

Plaintiff contends in his fifth claim that Defendants Foster and Brown denied him access to the courts in violation of the First, Fifth, and Fourteenth Amendments.

5

*Claim Six*

According to Plaintiff, when he was released from the SMU on May 12, 2014, he was placed in Dorm 5 and assigned to an upper bunk in a cell. Plaintiff states that the bunk had no step ladder, was made of steel, and was not bolted to the floor. Plaintiff states that he informed Defendants Cooney, Robinson, Buchanan, and Williams about the bunk not being bolted to the floor and not having a ladder. According to Plaintiff, he also informed these Defendants that "when [he] tries to get in the bunk the entire steel bunk moves and flips . . . ." Plaintiff states that on June 19, 2014, he fell and injured himself while getting out of his bunk to turn on the light. Plaintiff states that he fell approximately four feet to the floor and injured his lower back, spine, neck, and right arm. Plaintiff states that he informed Defendant Buchanan of his fall and "medical disposition." According to Plaintiff, Defendant Buchanan told Plaintiff that she could send him to the SMU in administrative segregation and assign him to a bottom bunk if he was unable to get out of his upper bunk. However, Plaintiff states, she did not send Plaintiff to either place and he remained in the upper bunk from which he had fallen.

According to Plaintiff, on July 7, 2014, while he was getting out of his bunk, the entire bunk tipped over and fell on top of Plaintiff. Plaintiff states that he was knocked unconscious and "Security Staff pulled the Steel Bunk off of Plaintiff." Plaintiff sought medical attention for his injuries.

Plaintiff contends in this sixth claim that in subjecting him to these unsafe sleeping conditions, Defendants Cooney, Robinson, Buchanan, and Williams violated the Eighth Amendment.

*Claim Seven*

According to Plaintiff, when he was injured after falling from his bunk on June 6, 2014, he was treated by Defendant Bradley, LPN. Plaintiff states that she placed Plaintiff on gym restriction and told Plaintiff not to exercise for six weeks. According to Plaintiff, he was "Limited to ONLY board games, television, video games and band room No exercise for, six, 6 Weeks." Plaintiff states that an injury to his Achilles[3] tendon that he sustained back in 2003 requires that he use weights to keep his "nerves" from tightening. According to Plaintiff, on June 20, 2014, he went to the gym and exercised his Achilles tendon. Three days later, Defendants Cooney, Robinson, Buchanan, and Williams, informed Plaintiff that he was on gym restriction for six weeks, and if he was caught exercising he would receive a disciplinary report and be placed in the SMU. Plaintiff states that being prohibited from exercise for these six weeks caused his Achilles tendon to become "complety stiff, Locked-up and [P]laintiff now walks with amazing pain when he is able to walk . . . ."

Plaintiff's seventh claim is against Defendants Cooney, Robinson, Buchanan, and Williams. In this claim, Plaintiff alleges that in denying Plaintiff the ability to use the gym to exercise his Achilles tendon, these Defendants violated the Eighth Amendment.

## II. **STANDARD OF REVIEW**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon

---

[3] Plaintiff incorrectly spells this as "ilKiley's" in his pleadings. The Court will use the correct spelling.

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

# III. ANALYSIS

## A. Retaliation Claims

Plaintiff makes two retaliation claims. The first claim is brought against Defendant Foster for allegedly making a false allegation against Plaintiff and having him placed in the SMU on May 5, 2014, because he filed a lawsuit against a former GRCC warden. The second claim is brought against Defendant Brown for allegedly placing Plaintiff in a strip cell for five days, May 8-12, 2014, for filing a grievance involving two GRCC employees.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Upon consideration, the Court will allow the two retaliation claims to proceed.

## B. Privacy Claim

Plaintiff claims that while he was showering on May 7, 2014, in the SMU shower that had a window, Defendant Bradley came to the shower window twice and stared at him and his penis. Plaintiff states that the second time Defendant Bradley walked past, she looked at Plaintiff and smiled. According to Plaintiff, Defendant Bradley later came to the walk and made comments about the size of Plaintiff's penis. As for Defendant Gee, Plaintiff states that he was the supervisor on the shift, and he took no action to stop Defendant Bradley from returning to the window the second time.

"Neither the Supreme Court nor the Sixth Circuit has ever expressly recognized that the fourth amendment 'right to privacy' encompasses the right to shield one's naked body from view by members of the opposite sex." *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987). The Sixth Circuit agrees with other circuits "in recognizing that a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). "Couched in fourth amendment terms, the inquiry becomes whether plaintiff has a reasonable expectation of privacy from such 'searches.'" *Kent v. Johnson*, 821 F.2d at 1226.

In *Kent v. Johnson*, the Sixth Circuit found a constitutional violation where "women guards were permitted and required to observe [the inmate] performing necessary bodily functions in his cell and while showering." *Id.* at 1224. However, the Sixth Circuit later held that accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation. *Mills v. City of Barbourville*, 389 F.3d 568 (6th Cir. 2004). In *Mills* the Sixth Circuit distinguished that case from *Kent* on the basis that "*Kent* involved prison policies that subjected inmates to *routine* searches or viewing by guards of the opposite sex." *Id.* at 579. Of interest in *Mills*, in addressing a claim brought against one of the opposite sex defendants for intentionally looking at her while in the shower, the Sixth Circuit stated that "[i]f plaintiff can demonstrate that [defendant] planned or intended to see her during the search, he would not be entitled to qualified immunity." *Id.*

Upon consideration, the Court will allow the privacy claim to proceed against Defendant Bradley.

10

However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978); *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see Shehee v. Luttrell*, 199 F.3d at 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Plaintiff only alleges that Defendant Gee failed to act; Plaintiff fails to set forth any wrongful acts on the part of this Defendant. Therefore, the privacy-act claim against Defendant Gee will be dismissed from this action.

## C. *Conditions-Of-Confinement Claims*

### *1. Bunk bed*

Plaintiff states that he was assigned to an upper bunk which had no step ladder, was made of steel, and was not bolted to the floor. Plaintiff represents that he informed Defendants Cooney, Robinson, Buchanan, and Williams about the bunk bed not being bolted to the floor and not having a ladder. According to Plaintiff, he also informed these Defendants that "when [he]

tries to get in the bunk the entire steel bunk moves and flips . . . ." Plaintiff states that on June 19, 2014, he fell and injured himself while getting out of his bunk. Plaintiff states that he informed Defendant Buchanan of his fall and "medical disposition." However, Plaintiff states that he remained assigned to the bunk. According to Plaintiff, he again fell out of the bunk on July 7, 2014. This time, Plaintiff represents, the bunk fell on top of him and knocked him unconscious.

An Eighth Amendment conditions-of-confinement claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* at 834. In order to satisfy this standard, "the official [must] know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Upon consideration, the Court will allow the Eighth Amendment claim regarding the allegedly unsafe bunk to proceed against Defendants Cooney, Robinson, Buchanan, and Williams.

### *2. Denial of exercise*

According to Plaintiff, as a result of being injured on June 6, 2014, he was seen by medical staff, Defendant Bradley, LPN. This nurse placed Plaintiff on gym restriction.

According to Plaintiff, he was "[l]imited to ONLY board games, television, video games and band room No exercise for, six, 6 Weeks." On June 20, 2014, Plaintiff states that he went to the gym to exercise his Achilles tendon which had been injured in a prior accident and required daily exercise. Three days later, Plaintiff represents, Defendants Cooney, Robinson, Buchanan, and Williams informed him that he was on gym restriction for six weeks, and that if he was caught exercising he would receive a disciplinary report and be placed in the SMU. Plaintiff states that being prohibited from exercise for these six weeks, caused his Achilles tendon to lock up resulting in pain. He contends that Defendants Cooney, Robinson, Buchanan, and Williams violated the Eighth Amendment when they prohibited him from using the gym to exercise his Achilles tendon during the six weeks he was on gym restriction.

The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from deliberate indifference to an inmate's serious medical needs since such indifference constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106; *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).

However, a difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle v. Gamble*, 429 U.S. at 107; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to . . . medical needs."); *Shorner v. Comacho*, No 99-6717, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000) ("A difference of

opinion regarding medical treatment . . . is insufficient to state a claim under the Eighth Amendment.").

In the present case, Plaintiff states that a medical official in the institution placed Plaintiff on gym restriction for six weeks and "[l]imited [him] to ONLY board games, television, video games and band room No exercise for six, 6 Weeks." Based on the allegations made by Plaintiff, Defendant's Cooney, Robinson, Buchanan, and Williams were enforcing the medical restrictions placed upon Plaintiff at the time. Plaintiff's claim is at best a difference of opinion with the medical treatment he was receiving and is not a constitutional violation.

Accordingly, the Eighth Amendment denial-of-exercise claim against Defendants Cooney, Robinson, Buchanan, and Williams will be dismissed for failure to state a claim upon which relief may be granted.

### 3. *Incarceration in the strip cell*

Plaintiff claims that Defendant Brown had him incarcerated in a strip cell from May 8, 2014, until May 12, 2014. According to Plaintiff, he was completely naked during this time, he had no mattress, and no bedding was provided for him. Plaintiff states that he was required to sleep on a concrete floor that had screws sticking out of it.

Upon consideration, the Eighth Amendment claim against Defendant Brown regarding the conditions of confinement while Plaintiff was in the strip cell from May 8-12, 2014, will proceed.

### D. *Access-To-Courts Claim*

Plaintiff states that his reply to defendants' response to his motion for summary judgment in Case No. 5:12CV-P180-R was due during the time Plaintiff was in the strip cell. He alleges that Defendant Brown would not allow him to have access to his legal materials in order to mail

the reply.  Further, Plaintiff states that his motion for summary judgment in Case No. 5:12CV-P180-R was denied, but he "may have won Summary Judgment" if he had not missed his filing deadline.

Plaintiff has a constitutionally protected right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  This right is denied if prison officials deprive him of a "reasonably adequate opportunity" to challenge his sentence or the conditions of his confinement.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Deprivation of this right "in some theoretical sense" will not establish a violation of the right to access the courts.  *Id.*  Rather, Plaintiff must show "actual prejudice to non-frivolous claims."  *Hadix v. Johnson*, 182 F.3d 400, 406 (6th Cir. 1999).  In the present case, Plaintiff fails to show "actual prejudice to non-frivolous claims."

A review of the record in Case No. 5:12CV-P180-R reveals that Plaintiff's reply was due on May 15, 2014, some three days after Plaintiff states that he was returned to general population.  Further, the record reveals that Plaintiff did subsequently file a reply to the response.  Although the motion for summary judgment was denied prior to Plaintiff filing his reply, Plaintiff filed a motion for the court to reconsider the denial subsequent to the filing of Plaintiff's reply.  The court still denied Plaintiff's motion for summary judgment.  There is no evidence that Plaintiff was in any way prejudiced by the inability to work on or mail legal documents for the five days he was incarcerated in the strip cell.  Nor has Plaintiff presented any such evidence.  He presents only speculation that he "may have won summary judgment" if his reply had been filed on time.

Plaintiff has failed to state a § 1983 claim as to the alleged denial of access to the courts; thus, this claim will be dismissed.

## IV. ORDER

**IT IS ORDERED** that the following claims will proceed: (1) the First Amendment retaliation claim against Defendant Foster arising out of Plaintiff being placed in the SMU on May 5, 2014; (2) the First Amendment retaliation claim against Defendant Brown arising out of Plaintiff being placed in the strip cell from May 8-12, 2014; (3) the Fourth Amendment right-to-privacy claim against Defendant Bradley; (4) the Eighth Amendment claim against Defendants Cooney, Robinson, Buchanan, and Williams regarding the allegedly unsafe bunk; and (5) the Eighth Amendment claim against Defendant Brown regarding the conditions of confinement while Plaintiff was in the strip cell from May 8-12, 2014.

**IT IS FURTHER ORDERED** as follows:

(1) the right to privacy claim against Defendant Gee is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) since it fails to state a claim upon which relief may be granted;

(2) the denial-of-exercise claim against Defendants Cooney, Robinson, Buchanan, and Williams is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) since it fails to state a claim upon which relief may be granted;

(3) the denial of the access-to-courts claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) since it fails to state a claim upon which relief may be granted; and

(4) Defendant Gee is **DISMISSED** from this action since all of the claims against him have been dismissed. The **Clerk of Court** is **DIRECTED** to remove this Defendant from the docket of this action.

The Court will enter a separate Scheduling Order governing the development of the continuing claims. In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date: October 10, 2014

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.003